UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURA LYNN FOWLER,                          Case No. 09-14342

       Plaintiff,                        Victoria A. Roberts
vs.                                          United States District Judge

COMMISSIONER OF                              Michael Hluchaniuk
SOCIAL SECURITY,                             United States Magistrate Judge

       Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 17)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On November 4, 2009, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Victoria A. Roberts referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability insurance and supplemental security income benefits.  (Dkt. 2).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 12,17).

### B.   Administrative Proceedings

Plaintiff filed the instant claims on April 17, 2006, alleging that she became

unable to work on October 3, 2005. (Dkt. 6, Tr. at 102-04). The claim was initially disapproved by the Commissioner on September 26, 2006. (Dkt.6, Tr. at 49-52). Plaintiff requested a hearing and on December 9, 2008, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Deborah Arnold, who considered the case *de novo*. In a decision dated June 3, 2009, the ALJ found that plaintiff was not disabled and that she could perform a reduced range of sedentary work. (Dkt. 6, Tr. at 10-22). Plaintiff requested a review of this decision on June 17, 2009. (Dkt. 6, Tr. at 8). The ALJ's decision became the final decision of the Commissioner when, on September 3, 2009, plaintiff's request for review was denied. (Dkt. 6, Tr. at 1-3); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 39 years of age at the time of the most recent administrative hearing. (Dkt. 6, Tr. at 28). Plaintiff's relevant work history included approximately eight years as a grocery store clerk and a waitress/barkeep. (Dkt. 6,

Tr. at 135).  In denying plaintiff's claims, defendant Commissioner considered degenerative disc disease of the lumbar spine, degenerative joint disease of the hips, and obesity as possible bases of disability.  (Dkt. 6, Tr. 15).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since April 17, 2006.  (Dkt. 6, Tr. at 15).  At step two, the ALJ found that plaintiff's impairments were "severe" within the meaning of the second sequential step.  *Id.* At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 6, Tr. at 16).  At step four, the ALJ found that plaintiff could not perform her previous work as a grocery store clerk.  (Dkt. 6, Tr. at 18).  At step five, the ALJ denied plaintiff benefits because plaintiff had the residual functional capacity to perform a reduced range of sedentary work and thus, could perform a significant number of jobs available in the national economy.  *Id.*

    B.    <u>Medical Evidence</u>

In April 2004, plaintiff presented to John Roberts, a physician's assistant, with complaints of diffuse lower back pain since August 2004.  (Tr. 218). Plaintiff's spine and musculoskeletal systems were normal on examination; Mr. Roberts recommended physical therapy, Flexeril (muscle relaxant), Motrin (Ibuprofen, an anti-inflammatory), and Darvocet (pain medication).  (Tr. 218).

Plaintiff returned later that month and Mr. Roberts noted that she had paraspinous symptoms in her cervical and lumbar spine areas, but a normal range of motion. (Tr. 217). Cervical spine and lumbar spine x-rays performed later in April 2005 revealed decreased cervical lordosis, but no other abnormalities. (Tr. 249). That month, plaintiff began physical therapy for her lower back and cervical spine conditions and reported that she had difficulty sleeping and could not lift her daughter or stand, walk, or sit for very long. (Tr. 182). She stated that she had difficulty cleaning, washing laundry, and bending and reported that a doctor had limited her to sitting or standing for no more than 15 minutes at a time and lifting no more than three pounds. (Tr. 182). Plaintiff initially walked with an efficient gait, but later had an antalgic gait. (Tr. 183). Plaintiff had: a reduced range of lumbar spine motion; tenderness over the sacroiliac joints; paralumbar muscle spasms; 4/5 strength in her lower extremities; somatic dysfunction in the sacroiliac complex; decreased hamstring flexibility; and a positive right straight leg raising test. (Tr. 183). The next month, plaintiff's physical therapist discharged her from therapy and reported that she had attended seven out of ten sessions, had achieved her short term goals, and was feeling 40% better. (Tr. 235).

Plaintiff presented to Mr. Roberts twice in May 2005 and displayed a limited range of spine motion and paraspinous pain/tenderness with the right worse than the left. (Tr. 214-15). Plaintiff presented to Dr. Loubert at the end of May 2005

for treatment of a kidney infection and also reported a history of chronic low back pain. (Tr. 239). Dr. Loubert noted that plaintiff had back pain and some hip pain and recommended continuing Ibuprofen and Flexeril. (Tr. 240). Plaintiff presented to Mr. Roberts in June 2005 for a lumbar steroid injection and on examination had right leg radiculopathy and paraspinous pain/tenderness, but a normal range of motion. (Tr. 212). Later that month, Mr. Roberts noted that plaintiff had a normal range of motion in her spine and musculoskeletal system. (Tr. 211). At the end of June 2005, Mr. Roberts noted that Plaintiff had lumbar paraspinous pain/tenderness and radiculopathy, but had a normal range of motion in her spine and musculoskeletal system. (Tr. 209).

In July 2005, plaintiff presented to physician's assistant Peter Rittenhouse for a medication refill, and Mr. Rittenhouse noted that she had a sharp pain at L3 radiating to the sacrum, but a full range of musculoskeletal motion; he ordered a lumbar CT scan and recommended nerve block injections. (Tr. 208). A lumbar CT scan that month yielded unremarkable results. (Tr. 230). Between August and December 2005, plaintiff presented to Mr. Roberts four times for treatment of her chronic conditions, including lumbar spine pain. (Tr. 202-03, 206-07). During the two appointments in August 2005, Mr. Roberts noted that plaintiff had lumbar paraspinal pain/tenderness and a full range of spine and musculoskeletal motion; he recommended Vicodin (pain medication) in place of Darvocet, steroids, and

epidural pain blocks.  (Tr. 206-07).  During the second appointment that month, Mr. Roberts noted that plaintiff had diffuse hip pain.  (Tr. 206).  In September 2005, Mr. Roberts noted that plaintiff had a full range of spine motion, diffuse lumbar paraspinal pain/tenderness, and a normal musculoskeletal system.  (Tr. 203).  He made similar findings in December 2005, but also noted that plaintiff had right leg radiculopathy.  (Tr. 202).

A January 2006 lumbar spine MRI revealed degenerative disc disease with broad based disc bulging at L5-S1; results consistent with annular disruption; and mild facet arthropathy.  (Tr. 167).  Plaintiff presented to Mr. Roberts seven times between January and May 2006 for treatment of her chronic medical conditions, including lumbar spine pain.  (Tr. 193-95, 197, 199-201).  During two appointments in January and March 2006, Mr. Roberts reported similar findings to those he reported in December 2005.  (Tr. 199, 201-02).  Later in March, Mr. Roberts found that plaintiff had lumbar paraspinous pain/tenderness and recommended she continue her medications.  (Tr. 197).

Plaintiff presented in May 2006 for medication refills and displayed right radiculopathy and lumbar paraspinous pain/tenderness, but had a normal musculoskeletal system.  (Tr. 195).  The next day, plaintiff complained of bilateral leg pain and Mr. Roberts noted that she had a full range of spinal motion, radiculopathy, and a normal musculoskeletal system.  (Tr. 194).  A nerve

conduction study that month was abnormal.  (Tr. 192).  An August 2006 right hip

x-ray showed no fracture, but did reveal sclerosis and possible erosions of the SI

joint.  (Tr. 257).

In September 2006, Dr. Gause performed an examination of plaintiff for the

state Disability Determination Service.  (Tr. 260-63).  On examination, plaintiff

showed no evidence of joint laxity, crepitance, or effusion.  (Tr. 261).  Plaintiff

had: full grip strength; normal dexterity; no difficulty getting onto and off of the

examination table; no difficulty heel and toe walking; and no difficulty squatting

and hopping.  (Tr. 261).  Plaintiff had pain on straight leg raising tests and

decreased range of dorsolumbar spine and hip motion.  (Tr. 261-62).  Plaintiff

displayed normal motor strength, normal sensation, and a normal gait.  (Tr. 262).

Dr. Gause opined that plaintiff's back and right hip conditions might lend

themselves to surgical treatment and that the examination strongly suggested

degenerative disc disease with secondary sciatica.  (Tr. 262).  He stated that lifting,

bending and any other activities involving the lumbar spine would be extremely

limited without some definitive surgery or treatment.  (Tr. 262).

Plaintiff presented to Mr. Roberts or another physician's assistant on eight

occasions between March and August 2007 with a variety of complaints including

hip and shoulder pain.  (Tr. 276-82).  Plaintiff was often prescribed Vicodin,

Flexeril, and Ibuprofen, as well as medications for other conditions.  (Tr. 276-82).

The physician's assistants typically noted that plaintiff had a full range of spine motion, paraspinous pain/tenderness, a full range of musculoskeletal motion, and radiculopathy with pain in her extremities and paresthesia in her right leg. (Tr. 276-82).

In May 2007, Mr. Roberts ordered an x-ray due to plaintiff's hip and shoulder pain. (Tr. 281). At the end of May 2007, Mr. Roberts noted that plaintiff had arm pain and provided Cortisone injections for plaintiff's shoulder pain. (Tr. 279). Between September 2007 and May 2008, plaintiff presented to Mr. Roberts and another physician's assistant on ten occasions for treatment of conditions including lower back pain with radiculopathy in the right leg. (Tr. 315-24). Plaintiff typically displayed a full range of spine motion and lumbar paraspinous pain/tenderness. (Tr. 315-24). On four occasions, Mr. Roberts also noted that plaintiff had symptoms such as tender upper and lower extremities and bilateral hand pain and numbness. (Tr. 315-17, 320). Plaintiff was prescribed medication including Motrin (Ibuprofen), Flexeril, and Vicodin, and on at least one occasion, Lyrica (neuropathic pain medication). Mr. Roberts noted in October 2007 that plaintiff had been in the emergency room and had been given Percocet (pain medication). (Tr. 322).

In January 2008, plaintiff reported that she had been in the emergency room after falling and had a recent episode of tingling on the right side and facial

numbness.  (Tr. 319).  In May 2008, Mr. Roberts referred plaintiff to a pain clinic.

(Tr. 315).  In June 2008, Dr. Agha performed electrodiagnostic tests due to

plaintiff's complaints of tingling in both hands, pain in both shoulders radiating to

her wrists, and right hand weakness.  (Tr. 304).  On examination, plaintiff had a

normal range of upper extremity motion, diffusely decreased sensation in the upper

extremities, normal upper extremity strength, and a normal gait.  (Tr. 304). The

tests revealed no evidence of cervical radiculopathy.  (Tr. 304-05).  Between July

2008 and February 2009, plaintiff presented to Mr. Roberts and other physician's

assistant on eight occasions; plaintiff was seen by Dr. Wagner once and he

cosigned three other treatment notes.  (Tr. 306-14).  On three occasions, it was

noted that plaintiff had a full range of spinal motion and paraspinous

pain/tenderness.  (Tr. 307, 308, 312).

     In July 2008, Mr. Roberts discussed changes in medications to treat

plaintiff's longstanding back and hip pain.  (Tr. 314).  Mr. Roberts refilled

plaintiff's Lyrica, Vicodin, and Naproxen (arthritis pain medication) and again

referred her to a pain clinic.  (Tr. 314).  In September 2008, plaintiff complained of

inability to grasp and pain in her shoulders; the physician's assistant prescribed

Vicodin, Lyrica, and Motrin.  (Tr. 311).  The next month, plaintiff complained of

fatigue and depression and the physician's assistant prescribed Cymbalta.  (Tr.

310).

C.    Plaintiff's Claims of Error

Plaintiff claims that the ALJ did not properly assess her pain complaints in accordance with SSR 96-8p and did not give sufficiently good reasons for finding her to be not fully credible.  And, given the faulty analysis, the ALJ also failed to accurately portray plaintiff's limitations in the hypothetical posed to the vocational expert.

The plaintiff also points to two misstatements of the record made by the ALJ.  First, while the ALJ opined that "a nerve conduction study on May 5, 2006 revealed bilaterally normal lower extremity findings" (Tr. 17), the electro-diagnostic test indicates "this study is abnormal."  (Tr. 192).  Second, the ALJ discusses the consultative examination by Dr. Gause on September 9, 2006 and points out the normal findings but fails to discuss that Dr. Gause also found a positive straight leg raising test at 25 degrees on the right and 45 degrees on the left, along with reduced flexion in the lumbar spine and reduced motion in both hips.  (Tr. 262).   After performing the examination, Dr. Gause opined that plaintiff's back problem "might lend itself to surgical treatment although this apparently has not been discussed with her.  The exam would suggest strongly that we are dealing with degenerative disc disease of the lumbar spine with secondary sciatica and that there is secondary sciatica on the right. It would also suggest that lifting, bending and any other activities that involved the lumbar spine would be

2:09-cv-14342-VAR-MJH   Doc # 18   Filed 03/02/11   Pg 11 of 29   Pg ID 420

extremely limited without some definitive surgery or treatment." (Tr. 262).

Plaintiff also asserts that the ALJ erred because the VE's testimony was inconsistent with the hypothetical and/or the DOT and the VE did not explain that inconsistency in accordance with SSR 00-4p. The information clerk position with the DOT code given at the hearing indicates that the job is performed at an SVP of 4 which would place that job into the semi-skilled arena and not the unskilled arena, according to plaintiff. In addition, the order checker position with the DOT code given at trial indicates that the job is performed at the light level and not the sedentary level.

D.    Commissioner's Cross-Motion for Summary Judgment

Between September 2007 and May 2008, plaintiff presented to Mr. Roberts and another physician's assistant ten times for treatment of conditions including lower back pain with radiculopathy, and although Mr. Roberts noted that Plaintiff had symptoms such as tender upper and lower extremities, hand pain and numbness, and lumbar paraspinous pain/tenderness, the Commissioner points out that plaintiff typically displayed a full range of spine motion and a normal musculoskeletal system. (Tr. 315-24). The Commissioner also points out that, except for the addition of Lyrica, plaintiff's medications remained unchanged throughout this period. (Tr. 315-24).

Between July 2008 and February 2009, plaintiff presented to Mr. Roberts,

Report and Recommendation
Cross-Motions for Summary Judgment
*Fowler v. Comm'r*; Case No. 09-14342

another physician's assistant, and Dr. Wagner on eight occasions, but the medical sources only documented examination findings for plaintiff's back condition three times when they noted that she had paraspinous pain/tenderness, but a full range of spinal motion. (Tr. 306-14). The Commissioner also points out that although plaintiff was referred to a pain clinic, there are no medical records concerning any treatment from a pain clinic in the administrative record. (Tr. 314). Furthermore, plaintiff's medications for her spine condition did not significantly change during this period. (Tr. 306-14). Thus, the Commissioner argues that the ALJ reasonably concluded that plaintiff's subjective complaints were not as severe or limiting as she alleged. (Tr. 18). For example, treatment notes reflect that although plaintiff often had some symptoms on examination, she also often had normal findings. Furthermore, plaintiff's claimed limitations are belied by the fact that plaintiff had only conservative treatment with medication, with little variation in dosage and type of medication over time.

According to the Commissioner, with respect to Dr. Gause's finding that plaintiff had pain on straight leg raising tests, plaintiff fails to explain how this finding was inconsistent with the ALJ's conclusion that she was capable of performing a reduced range of sedentary work. (Tr. 16, 261). Plaintiff recites some of Dr. Gause's conclusion and emphasizes that Dr. Gause believed that she had degenerative disc disease of the lumbar spine with sciatica, but the

Commissioner asserts that Dr. Gause's statement is entirely consistent with the ALJ's decision, as the ALJ found that plaintiff had degenerative disc disease of the lumbar spine.  (Tr. 15, 262).  While plaintiff also emphasizes that Dr. Gause opined that she was extremely limited in lifting, bending and any other activities involving the lumbar spine, the Commissioner points out that Dr. Gause's conclusion is consistent with the ALJ's RFC finding because the ALJ found that plaintiff was limited to a reduced range of sedentary work with only occasional bending.  (Tr. 16, 262).

Plaintiff further claims that the ALJ incorrectly summarized a May 2006 nerve conduction study and asserts that the ALJ's misstatement constitutes reversible error.  The Commissioner acknowledges that the ALJ incorrectly stated that the May 2006 nerve conduction study was normal, however, the Commissioner asserts that plaintiff has not identified reversible error because the report's conclusions do not demonstrate that she had any functional limitations. (Tr. 192).

The Commissioner also argues that the Court should reject plaintiff's assertion that the VE's testimony was inconsistent with the Dictionary of Occupational Titles (DOT) and the VE did not explain the inconsistency pursuant to Social Security Ruling 00-4p.  According to the Commissioner, SSR 00-4p does not provide that an ALJ errs when she relies on a VE's testimony that conflicts

with the DOT.  Rather, SSR 00-4p states that an ALJ must ask whether a VE's

testimony conflicts with the DOT and may not rely on such testimony when there

is an apparent unresolved conflict between the DOT and the VE's testimony.  Here,

the Commissioner point outs, there was no apparent unresolved conflict between

the VE's testimony and the DOT.  The ALJ asked whether the VE's testimony was

consistent with the DOT and the VE responded that it was.  (Tr. 42).  According to

the Commissioner, an ALJ is under no obligation to investigate the accuracy of the

VE's testimony beyond the inquiry mandated by Social Security Ruling 00-4p.

*Beinlich v. Comm'r of Soc. Sec.*, 345 Fed.Appx. 163, 168 (6th Cir. 2009), citing,

*Lindsley v. Comm'r. of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009).  Rather, the

obligation to investigate an inconsistency falls to plaintiff's counsel, who had the

opportunity to cross-examine the VE and bring out any conflicts with the DOT.

*Beinlich*, 345 Fed.Appx. at 168.  Plaintiff was represented by counsel at the

hearing, but her counsel did not question the VE regarding any inconsistencies

between the VE's testimony and the DOT.

    Although plaintiff argues that there was a conflict between the DOT and the

VE's testimony regarding the information clerk and order checker positions,

plaintiff fails to acknowledge the lack of conflict between the DOT and the VE's

testimony with respect to the position of Machine Operator (DOT code number

615.685-014), with 2,600 positions in the regional economy.  (Tr. 40).  Thus,

according to the Commissioner, even if plaintiff's characterization of Social Security Ruling 00-4p was assumed to be correct, she has failed to identify any reversible error.  *See Hall v. Bowen*, 837 F.2d 272, 273, 275–76 (6th Cir. 1988) (1,350 jobs is a significant number of jobs in Dayton area and national economy).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence."). "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec.

Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

>   B.   Governing Law

>   >   1.   Burden of proof

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).  There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits...physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

2.     Substantial evidence

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Credibility and RFC</u>

    The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).  "A claimant's severe impairment may or may not affect his or her functional capacity to do work.  One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004).  "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms."  *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e).  An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility.  *Walters*, 127 F.3d at 531.

    The ALJ found that plaintiff's retained the residual functional capacity to perform a limited range of sedentary work:

>    After careful consideration of the entire record, the
>    undersigned finds that the claimant has the residual
>    functional capacity to perform a reduced range of
>    sedentary work as defined in 20 CFR 416.967(a).  The
>    claimant can do the following: lift up to 20 pounds
>    occasionally and 10 pounds frequently; occasionally
>    bend; stand or walk for a total of 2 hours in an 8 hour day
>    (20 CFR 416.945).

(Tr. 16).  Sedentary work is defined in the regulations as follows:

>    Sedentary work involves lifting no more than 10 pounds
>    at a time and occasionally lifting or carrying articles like
>    docket files, ledgers, and small tools. Although a
>    sedentary job is defined as one which involves sitting, a
>    certain amount of walking and standing is often
>    necessary in carrying out job duties. Jobs are sedentary if
>    walking and standing are required occasionally and other
>    sedentary criteria are met.

20 C.F.R. § 416.967(a).

While the record reveals that plaintiff's condition resulted in several

limitations, as found by the ALJ, the mere existence of a particular condition is

insufficient to establish an inability to work.  *See e.g.*, *Howard v. Comm'r of Soc.*

*Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (The residual functional capacity

circumscribes "the claimant's residual abilities or what a claimant can do, not what

maladies a claimant suffers from-though the maladies will certainly inform the

ALJ's conclusion about the claimant's abilities."); *Yang v. Comm'r of Soc. Sec.*,

2004 WL 1765480, *5 (E.D. Mich. 2004) ("A claimant's severe impairment may

or may not affect his or her functional capacity to do work.  One does not

necessarily establish the other."); *Griffeth*, 217 Fed.Appx. at 429 ("The regulations recognize that individuals who have the same severe impairment may have different residual functional capacities depending on their other impairments, pain, and other symptoms."). Moreover, plaintiff does not offer any opinion from a treating physician that she was more physically limited than as found by the ALJ. *See Maher v. Sec'y of Health and Human Serv.*, 898 F.2d 1106, 1109 (6th Cir. 1987), citing, *Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987) ("lack of physical restrictions constitutes substantial evidence for a finding of non-disability."). To the extent that plaintiff points to other subjective limitations, such subjective evidence is only considered to "the extent [it] can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Ditz v. Comm'r of Soc. Sec.*, 2009 WL 440641, *10 (E.D. Mich. 2009), citing, 20 C.F.R. § 404.1529(a), *Young v. Secretary*, 925 F.2d 146, 150-51 (6th Cir. 1990); *Duncan v. Sec'y*, 801 F.2d 847, 852 (6th Cir. 1986).

In this case, the undersigned concludes that the ALJ's RFC finding was entirely consistent medical evidence. Between July 2008 and February 2009, plaintiff presented to Mr. Roberts, another physician's assistant, and Dr. Wagner on eight occasions, but the medical sources only documented examination findings for plaintiff's back condition three times when they noted that she had paraspinous pain/tenderness, but a full range of spinal motion. (Tr. 306-14). Plaintiff's

medications for her spine condition did not significantly change during this period. (Tr. 306-14). In addition, treatment notes reflect that although plaintiff often had some symptoms on examination, she also often had normal findings. Furthermore, plaintiff's claimed limitations are belied by the fact that plaintiff had only conservative treatment with medication, with little variation in dosage and type of medication over time. Indeed, except for the addition of Lyrica, plaintiff's medications remained unchanged throughout this period. (Tr. 315-24). While plaintiff emphasizes that Dr. Gause's belief that she had degenerative disc disease of the lumbar spine with sciatica, the undersigned agrees with the Commissioner that Dr. Gause's statement is consistent with the ALJ's decision, as the ALJ found that plaintiff had degenerative disc disease of the lumbar spine. (Tr. 15, 262). More importantly, while plaintiff also emphasizes that Dr. Gause opined that she was extremely limited in lifting, bending and any other activities involving the lumbar spine, Dr. Gause's conclusion is consistent with the ALJ's RFC finding because the ALJ found that plaintiff was limited to a reduced range of sedentary work with only occasional bending. (Tr. 16, 262).

Given that a severe impairment does not equate to disability, the undersigned suggests that the ALJ's decision to find plaintiff's claimed limitations to be only partially credible is supported by the substantial evidence in the record and properly incorporated into the RFC finding. The ALJ's obligation to assess

credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999). This obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476.

As to plaintiff's claim that the ALJ failed to properly credit how limiting her pain was, the undersigned concludes that the ALJ's decision that plaintiff's pain complaints were not fully credible is supported by substantial evidence. As both parties acknowledge, subjective allegations of disabling pain cannot alone support a finding of disability. 20 C.F.R. § 404.1529(a). Rather, the presence of an underlying medical condition, which could produce disabling symptoms, satisfies the first prong of the Sixth Circuit standard for evaluating subjective complaints. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). To satisfy the second prong of the test, and prove that her subjective complaints are

disabling, plaintiff must present objective medical evidence confirming the severity of the alleged symptoms, or show that the medical condition is of such severity that it could reasonably be expected to produce disabling symptoms. *Duncan*, 801 F.2d at 853. Where, as here, plaintiff's alleged or reported symptoms were found to exceed the expected level of pain and/or dysfunction, the ALJ properly considered other factors relating to the subjective complaints as set forth in 20 C.F.R. § 404.1529 and SSR 96-7p.

Plaintiff's argument regarding the ALJ's reliance on the VE's testimony is also unavailing. SSR 00-4p requires an ALJ to inquire whether a VE's testimony conflicts with the DOT and may not rely on such testimony when there is an apparent unresolved conflict between the DOT and the VE's testimony. Here, the Commissioner point outs, there was no apparent unresolved conflict between the VE's testimony and the DOT. The ALJ asked whether the VE's testimony was consistent with the DOT and the VE responded that it was. (Tr. 42). The Sixth Circuit has made it clear that an ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by Social Security Ruling 00-4p. *Beinlich v. Comm'r of Soc. Sec.*, 345 Fed.Appx. 163, 168 (6th Cir. 2009), citing, *Lindsley v. Comm'r. of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009). Rather, the obligation to investigate an inconsistency falls to plaintiff's counsel, who, here, had the opportunity to cross-examine the VE and bring out any conflicts

with the DOT.  *Beinlich*, 345 Fed.Appx. at 168.  Thus, there is no ground for relief.

In addition, the undersigned is also persuaded that if there was a conflict between the DOT and the VE's testimony regarding the information clerk and order checker positions, nothing offered by plaintiff undercuts the DOT and the VE's testimony with respect to the position of Machine Operator (DOT code number 615.685-014), with 2,600 positions in the regional economy.  (Tr. 40).  That is, even if plaintiff's characterization of Social Security Ruling 00-4p is assumed to be correct, she has failed to identify any reversible error because regardless of that error, the VE's testimony still provides a significant number of jobs in the regional economy for a person with plaintiff's RFC.  *See Hall v. Bowen*, 837 F.2d 272, 273, 275–76 (6th Cir. 1988) (1,350 jobs is a significant number of jobs in Dayton area and national economy).

In light of the medical and other evidence discussed above, the undersigned suggests that the VE's opinion is consistent with the findings of treating physicians and mental health professionals, and can properly be considered substantial evidence.  Thus, the undersigned concludes that there is an insufficient basis on this record to overturn the ALJ's credibility determination and that the hypothetical relied on properly reflected plaintiff's limitations.  There is no basis to overturn the findings of the ALJ.

       4.    Conclusion

After review of the record, the undersigned concludes that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

Report and Recommendation
Cross-Motions for Summary Judgment
*Fowler v. Comm'r*; Case No. 09-14342

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

s/Michael Hluchaniuk_____
Date:  March 1, 2011                    Michael Hluchaniuk
                                        United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on March 1, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Mikel E. Lupisella, Kenneth L. Shaitelman, AUSA, and the Commissioner of Social Security.

s/Darlene Chubb_____
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov